UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CMA CGM S.A.<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>YACHT EXPORT LLC and CROSSNET INTERNATIONAL TRANSPORTATION, INC.<br>　　　　　Defendants. | Civil Action No. |

**COMPLAINT**

Plaintiff, CMA CGM S.A. ("CMA"), sues Defendants, YACHT EXPORT LLC ("YACHT EXPORT") and CROSSNET INTERNATIONAL TRANSPORTATION, INC. ("CROSSNET") (collectively 'Defendants"), and alleges as follows:

**JURISDICTION AND VENUE**

1.　　This is a maritime claim for breach of contract and unpaid detention, demurrage, storage and/or other costs pursuant to ocean bills of lading and an ocean carrier's tariff and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1).  It also presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101, *et seq*.

2.　　In the alternative, as there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds jurisdictional amount set by 28 U.S.C. § 1332, the prerequisites for diversity jurisdiction under 28 U.S.C. § 1441(b) are met and this Court is vested with subject matter jurisdiction over this action.

3.　　Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) in that all Defendants' place of business are within the judicial district of this Court.  Moreover, the transaction that form the basis for the subject contract for ocean carriage occurred within the judicial district of this Court.

## PARTIES

4. Plaintiff CMA now, and at all material times was, a foreign corporation duly organized and existing under the laws of France with a principal place of business at 4 Quai d'Arenc, 13002 Marseille, France. CMA was, and is, an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

5. Defendant YACHT EXPORT now, and at all material times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business at 401 E. Las Olas Blvd., Ft. Lauderdale, Florida 33301.

6. Defendant CROSSNET now, and at all material times was, a corporation organized and existing under the laws of Florida, with its principal place of business at 5520 NW 72nd Ave., Miami, Florida 33166.  CROSSNET is, and at all material times was, a non-vessel owning common carrier ("NVOCC").

7. CMA alleges that there may be additional entities or individuals that may be responsible in some manner for the occurrences and injuries alleged in this Complaint.  Their names and capacities are currently unknown to CMA at this time.  CMA will amend this Complaint to add such additional parties when the same have been ascertained.  CMA is informed, believes and thereon alleges that each additional entity or individual is liable for the acts and/or omissions as set forth below, and that CMA's rights against such additional entity or individual arises from such acts and/or omissions.

## FACTUAL BACKGROUND

8. On November 29, 2018, CROSSNET, on behalf of YACHT EXPORT, hired CMA for the ocean carriage of container no. SEGU7640035 (the "Container") containing a 33' Beneteau Boat on Cradle (the "Cargo") for carriage from Miami, Florida to Bremerhaven, Germany under CMA Bill of Lading No. NAM3323490 dated November 29, 2018 (the "CMA Bill").

9. CMA received the Container for shipment from Miami, Florida to Bremerhaven, Germany pursuant to the terms and conditions of CMA Bill.

10. At all material times, CROSSNET was the named shipper under the CMA Bill, and thus CROSSNET qualifies as a "Merchant" under Clause 1 of the Terms and Conditions of the CMA Bill.

11. At all material times, YACHT EXPORT was the actual shipper under the CMA Bill and owner of the Cargo, and thus YACHT EXPORT qualifies as a "Merchant" under Clause 1 of the Terms and Conditions of the CMA Bill.

12. Defendants were the entities for whose account the transportation services were provided by CMA, were the parties that received and benefitted from the transportation services provided by CMA, and were the entities responsible for payment of charges relating to the Container.

13. Defendants tendered the Container to CMA for transportation between the United States and Germany on M/V *CMA CGM CHATEAU D'IF* (the "Vessel") for which freight and other charges were lawfully incurred pursuant to the terms of the CMA Bill and/or applicable tariff(s).

14. CMA's Bill of Lading Standard Terms and Conditions (as applicable to the relevant CMA Bill) provides the following:

> **"Merchant"** includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this Bill of Lading and anyone acting on behalf of any such Person.
>
> ...
>
> **11.    NOTIFICATION AND DELIVERY**
>
> ...
>
> (2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff (see Clause 2). If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and / or to store the Goods ashore, afloat, in the open or under cover, at

the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall cease, and the costs of such storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

(3) If, whether by act or omission, the Merchant directly or indirectly prevents, delays or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full account.

(4) If the Merchant fails to take delivery of the Goods within ten days of delivery becoming due under Clause 11 (2), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility whatsoever attaching to him, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

...

## 13.     LIEN

The Carrier its servants or agents shall have a lien on the Goods and any documents related thereto and a right to sell the Goods whether privately or by public auction for all Freight (including additional Freight payable under Clause 12), primage, deadfreight, pre-Carriage and/or inland Carriage whatsoever, demurrage, Container demurrage and storage charges, detention charges, salvage, general average contributions and all other charges and expenses whatsoever which are for the account of the Goods or of the Merchant and for the costs and expenses of exercising such lien and of such sale and also for all previously unsatisfied debits whatsoever due to him by the Merchant. The Carrier, its servants or agents shall also have a lien on the Goods carried under this Bill of Lading and any document relating thereto for all sums including Freights and charges as above mentioned due and outstanding on any other Contracts for the Carriage of Goods concluded between the Carrier, its servants or agents and the Merchant, at any time where such sums or Freights remains due and unpaid. If the goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion, the Goods are likely to become deteriorated, decayed or worthless, the Carrier may, at its discretion without responsibility whatsoever, auction, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant. Nothing in this Clause shall prevent the Carrier from recovering from the Merchant the

difference between the amount due to him by the Merchant and the amount realised by the exercise of the rights given to the Carrier under this Clause.

. . .

**26.    SHIPPER'S / MERCHANT'S RESPONSIBILITY**

(1) All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this Bill of Lading, and remain so liable throughout Carriage notwithstanding their having transferred this Bill of Lading and/or title to the Goods to any third party. Such liability shall include but not be limited to court costs, expenses and attorney's fees incurred in collecting charges and sums due to the Carrier.

(2) The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods and contain no contraband.

(3) The Merchant shall indemnify the Carrier against all loss, damage, fines and expenses arising or resulting from any breach of any of the warranties in Clause 26 (2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible.

. . .

**31.    JURISDICTION**

All claims and actions arising between the Carrier and the Merchant in relation with the contract of Carriage evidenced by this Bill of Lading shall be brought before the Tribunal de Commerce de Marseille and no other Court shall have jurisdiction with regards to any such claim or action. Notwithstanding the above, the Carrier is also entitled to bring the claim or action before the Court of the place where the defendant has his registered office.

15.    On or about December 28, 2018, the Container was discharged in Bremerhaven, Germany and made available for collection.

16.    Defendants have refused to take delivery of the Container, provide the necessary documentation for the Container and/or the Cargo to clear customs, and/or provide any other shipping instructions.

-6-

17. Accordingly, the Container still remains idle at the marine terminal in Bremerhaven, Germany, thereby accruing various daily and other charges including detention and demurrage.

18. Having affected delivery of the Container, CMA fully performed all of its obligations under the CMA Bill.

19. As a result of Defendants' failure to take delivery of the Container, provide the necessary documentation for the Container and/or the Cargo to clear customs, and/or provide any other shipping instructions, CMA has incurred damages, liabilities, charges, expenses, fees and costs for storage, detention and demurrage.

20. Under the terms of the CMA Bill and/or applicable tariffs, Defendants are obligated to pay these costs, damages, and expenses due and owing by Defendants to CMA.

21. As of May 28, 2019, these costs, damages and expenses due and owing by Defendants to CMA total 97,320 EUR (equating to US$108,531.26 as of May 28, 2019). These costs, damages and expenses continue to accrue while the Container remains idle.

22. CMA fully performed all of its obligations under the CMA Bill. Defendants received and benefited from the transportation services provided by CMA, and are responsible for payment for these various damages, expenses and costs relating to the idle Container.

## FIRST CAUSE OF ACTION

(For Breach of Maritime Contract)

23. CMA refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 22 above.

24. CMA transported and carried the Container at the request and for the benefit of Defendants, in accordance with the terms and conditions of the CMA Bill.

25. CMA fully performed all of its obligations under the CMA Bill and carried the Container from Miami, Florida and successfully discharged the Container in Bremerhaven, Germany.

26. Under the terms of the CMA Bill and applicable law, Defendants was required to provide shipping instructions and/or customs documents and/or accept delivery of the Container within the time provided for in CMA's Bill, and they agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising form or resulting from their failure to provide shipping instructions and/or customs documents and/or accept delivery of the Container.

27. Under the terms of the CMA Bill and applicable law, Defendants agreed to be liable and responsible for any and all detention, demurrage and other charges due under the CMA Bill.

28. Defendants breached the terms of the CMA Bill by failing to provide shipping instructions and/or customs documents and/or accept delivery of the Container, and by failing to pay CMA the damages, liabilities, detention, demurrage, and other related expenses and fees arising from Defendants' breach or breaches of the CMA Bill.

29. As a proximate cause of Defendants' breach or breaches of the CMA Bill, breach of warranty, and the matters set forth herein, CMA has incurred, and Defendants are liable to CMA for, damages in the amount exceeding 97,320 EUR (equating to US$108,531.26 as of May 28, 2019). These costs, damages and expenses continue to accrue while the Container remains idle.

WHEREFORE, CMA demands judgment against Defendants for compensatory damages, attorneys' fees under the CMA Bill, pre- and post-judgment interest, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

(Money Due Under Marine Tariff)

30.     CMA refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 22 above.

31.     CMA transported and carried the Container at the request and for the benefit of the Defendants, and in accordance with the terms and conditions of the CMA Bill and subject to the rates and charges in its tariffs on file with the Federal Maritime Commission.

32.     Under the said tariffs, CMA is required to collect and is entitled to recover from Defendants, and Defendants are required to pay CMA, all unpaid demurrage, detention, port and terminal storage charges, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Container, as well as Defendants' failure to provide required shipping instructions and/or customs documentation and/or accept delivery of the Container.

33.     Despite demand for payment, Defendants have failed to pay CMA amounts due under the tariffs and tariff compensation is due, owing and unpaid to CMA from Defendants in an amount exceeding 97,320 EUR (equating to US$108,531.26 as of May 28, 2019).  Additional charges continue to accrue in accordance with the terms of said tariffs, together with attorneys' fees, costs and expenses incurred in collecting said charges.

WHEREFORE, CMA demands judgment against Defendants for compensatory damages, attorneys' fees under the CMA Bill, pre- and post-judgment interest, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION

(Negligence)

34.     CMA refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 22 above.

35. At all material times herein, Defendants owed CMA a legal duty to exercise due care to provide required shipping instructions and/or customs documentation and/or to accept delivery of the Container in Bremerhaven, Germany.

36. The legal duty of Defendants to CMA arose because Defendants are parties to the CMA Bill. The legal duty of Defendants to CMA also arose independently of the CMA Bill because of many factors, including, without limitation, the foreseeability of harm to CMA from their acts and omissions, the degree of certainty that CMA suffered injuries, the closeness of the connection between Defendants' conduct and the injury suffered.

37. Defendants breached their duty of care by, inter alia, failing to provide required shipping instructions and/or customs documentations and/or accept delivery of the Container in Bremerhaven, Germany or otherwise arranging for the Container's delivery.

38. As a proximate result of the negligence of Defendants, CMA has incurred, and Defendants are liable to CMA for, additional freight, storage, demurrage, detention, liabilities, charges, penalties, costs, expenses and fees in an amount exceeding 97,320 EUR (equating to US$108,531.26 as of May 28, 2019), plus any additional damages and costs as they continue to accrue.

WHEREFORE, CMA demands judgment against Defendants for compensatory damages, pre- and post-judgment interest, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## PRAYER

WHEREFORE, Plaintiff CMA prays for judgment against YACHT EXPORT and CROSSNET as follows:

1. That the Court order judgment in favor of CMA and against the YACHT EXPORT and CROSSNET jointly and severally in an amount not less than 97,320 EUR (equating to US$108,531.26), for any and all additional freight, storage, demurrage,

detention, liabilities, charges, penalties, other costs, expenses and fees caused by YACHT EXPORT and CROSSNET's breach or breaches of the CMA Bill and/or applicable tariffs and/or negligence, for all amounts due under CMA's tariffs, as well any additional damages and costs that continue to accrue at an amount to be established at trial;

2. That the Court award CMA its attorneys' fees, costs and expenses incurred as a result of YACHT EXPORT and CROSSNET's breach or breaches and/or in collecting the sums due from YACHT EXPORT and CROSSNET;

3. That the Court award CMA interest on all of the above as well as its costs of suit; and

4. That the Court award such other and further relief as the Court deems just and proper.

Dated: May 28, 2019

Respectfully submitted,

*s/ Ari C. Shapiro*
**ARI C. SHAPIRO**
FBN: 183253
*ashapiro@grsm.com*
**ANDREW R. SCHINDLER**
FBN: 124845
*aschindler@grsm.com*

**GORDON & REES**
**SCULLY MANSUKHANI, LLP**
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
Tel: (305) 428-5330
*Attorneys for CMA CGM S.A.*